SOUTHEASTERN BUILDING CORPORATION, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109218. Promulgated February 29, 1944.

*John W. Giesecke, Esq.,* for the petitioner.
*Bernard D. Hathcock, Esq.,* for the respondent.

382

384

OPINION.

DISNEY, *Judge*: Since the amendment of petition and abandonment of issues, the petitioner now presents only the following assignments of error:

(a) That the Commissioner erred in failing to find and hold that the petitioner was in an unsound financial condition and was, there-

fore, entitled to exclude from gross income for 1939, under section 22 (b) (9) of the Internal Revenue Code,[1] the $2,700 gain from retirement of bonds.

(b) That the Commissioner erred in allowing depreciation of only $3.291 for 1939, whereas he should have allowed depreciation, including obsolescence, in the sum of $9,436.97. (This figure on brief is modified to $7,936.97.)

The respondent denies generally and alleges, in the alternative, in effect, that if the $2,700 should not be held to be income, the total deficiency for 1939 will amount to $544 in lieu of the deficiency originally asserted.

Considering the first point: Under section 22 (b) (9) of the Internal Revenue Code, the exclusion requires proof of: (a) Discharge of indebtedness of the taxpayer, or for which the taxpayer is liable; (b) that the indebtedness be evidenced by a security; (c) unsound financial condition of the taxpayer; (d) filing by taxpayer of consent to the regulations on this subject.

The indebtedness was evidenced by a security as defined in the statute. The petitioner filed the necessary consent to the regulations. On these points there appears no disagreement. The petitioner relies upon the notice of deficiency, which is set forth in the margin,[2] as dispensing with proof that the bonds were its indebtedness, or indebtedness for which it was liable—on the theory that the deficiency

---

[1] SEC. 22. GROSS INCOME.

\* \* \* \* \* \* \*

(b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\* \* \* \* \* \*

(9) [Added by section 215 of the Revenue act of 1939.] INCOME FROM DISCHARGE OF INDEBTEDNESS.—In the case of a corporation, the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a security (as hereinafter in this paragraph defined) if—

(A) it is established to the satisfaction of the Commissioner \* \* \*

\* \* \* \* \* \* \*

that at the time of such discharge the taxpayer was in an unsound financial condition, and if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulations prescribes, its consent to the regulations prescribed under section 113 (b) (3) then in effect. \* \* \* As used in this paragraph the term "security" means any bond, debenture, note, or certificate, or other evidence of indebtedness, issued by any corporation, in existence on June 1, 1939. This paragraph shall not apply to any discharge occurring before the date of the enactment of the Revenue Act of 1939 \* \* \*. [The act was approved June 29, 1939.]

(c) TAXABLE YEARS TO WHICH APPLICABLE.—The amendments made by this section shall be applicable to taxable years beginning after December 31, 1938.

[2] The deficiency notice, dated September 29, 1941, contains the following explanation:

"During the year 1939 you satisfied $9,000.00 of bonded indebtedness constituting a lien upon real estate owned by you. Said satisfaction was accomplished by payment of the amount of $6,300.00 in discharge of said $9,000.00 of bonded indebtedness. In your return you show "Profit on Bonds" of $2,700.00 which is credited to earned surplus and undivided profits but said profit is not reported as taxable income. It is held that the profits of $2,700.00 constitutes taxable income and net income as reported in your return is increased accordingly."

notice is based upon the idea that the indebtedness retired was that of the petitioner. We think the contention is sound. The $2,700 was added to income in the deficiency notice necessarily on the basis that the indebtedness was a liability of the petitioner, since otherwise the amount of the difference between face amount of bonds and amount paid therefor did not constitute income. *Fulton Gold Corporation,* 31 B. T. A. 519. Such a deficiency notice assumes indebtedness of the taxpayer for the obligations retired. The petitioner had in several earlier years reported as income the gain upon redemption of bonds. We hold that the petitioner was not required to show that the indebtedness was its own or that it was liable therefor. This leaves for consideration, upon the present issue, only the question whether petitioner showed itself to be in an unsound financial condition at the time of discharge of indebtedness. Regulations 103, section 19.22 (b) (9)–1, issued to cover the provisions of section 22 (b) (9) of the Internal Revenue Code, provides in part as follows:

A corporation may be in an unsound financial condition, within the meaning of sectiton 22 (b) (9) and this section, even though the fair market value of its assets exceeds its liabilities or it is able to meet its current liabilities as they mature. Thus, highly indicative (but not conclusive) of an unsound financial condition would be the fact that bonds of the taxpayer are selling in a free market at prices substantially below their issue price and below the market price of similar issues of similar businesses.

Although petitioner purchased the bonds for "prices substantially below their issue price," there is no evidence that the purchase was "below the market price of similar issues of similar businesses," so the last sentence of the regulation appears to have no application here. The first sentence of the regulation indicates, however, that the petitioner has made the showing contemplated by the statute, as interpreted by the regulation. Petitioner was obviously not in a condition to meet its current liabilities as they matured. It had at the beginning of the year 1939 only $2,891.33 in cash, whereas, in addition to the bonds, its obligations, with an original maturity of less than one year, were $8,200. For the year 1939 it had available cash of $19,891.37, whereas its expenses and obligations for that year, including the $8,200, but not including the bonds, were $18,825.34. Thus it was left with only $1,066.03 with which to purchase the $9,000 par value of bonds. Its only property was worth about $54,000, and the bonds against it were $120,000. Considering the liability of petitioner for such debt inherent in the determination of deficiency, precarious financial situation appears. We conclude that the petitioner was in an unsound financial condition, within the meaning of the statute. Petitioner is therefore entitled to the exclusion from income provided by section 22 (b) (9). One-half of the $2,700, however, is not so excludible, since of the $9,000 total amount of bonds retired, $4,500, or one-

half, was retired in April 1939, prior to June 29, 1939, the effective date of section 215 (a) of the Revenue Act of 1939, by which the provisions of section 22 (b) (9) were added. As the bonds were retired for $700 for each $1,000 face value, the amount is allocable as between the periods before and after June 29, 1939.

The second issue presented is whether petitioner is entitled to a deduction for obsolescence under section 23 (l) of the Internal Revenue Code, as amended by section 121 (c) and (d) of the Revenue Act of 1942.[3]

The petitioner includes in its basis for obsolescence the amount of bonds subject to which it purchased the property. The respondent contends that the petitioner has failed to establish its right to such basis. The petitioner, however, argues that the fact of lien for the amount of the bonded indebtedness, at time of purchase, establishes a right to the amount thereof as basis for depreciation and obsolescence. We need not decide that question, since we have come to the conclusion that regardless of amount of basis the petitioner has not shown a right to the obsolescence for which deduction is claimed.

The petitioner relies most heavily upon certain language in *Burnet* v. *Niagara Falls Brewing Co.*, 282 U. S. 648 (involving disuse because of prohibition law), to the effect that there is no hard or fast rule "that a taxpayer must show that his property will be scrapped or cease to be used or useful for any purpose, before any allowance may be made for obsolescense," and that we should therefore approve obsolescence because of the termination of the use for which the building was created. Reliance is placed also upon *United States Cartridge Co.* v. *United States*, 284 U. S. 511. Both of the above cases were expressly referred to in *Real Estate-Land Title & Trust Co.* v. *United States*, 309 U. S. 13, where the Court, in a case involving a statute and regulation essentially the same as those here pertinent, said:

* * * Now it is true that in the popular sense a thing which is obsolete is one which is no longer used, * * *. But the term "allowance for obsolescence," as used in the Act and in the Treasury Regulations, has a narrower or more technical meaning than that derived from the common, dictionary definition of obsolete. The Treasury Regulations state the circumstances under which an allowance for obsolescence of physical property may be allowed, viz.,

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*       *       *       *       *       *       *

(l) [As amended by section 121 (c) of the Revenue Act of 1942 and made applicable to taxable years beginning after December 31, 1938, by sec. 121 (d) of the Revenue Act of 1942.] A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

(1) of property used in the trade or business, or

(2) of property held for the production of income.

(d) TAXABLE YEARS TO WHICH AMENDMENTS APPLICABLE.—The amendments made by this section shall be applicable to taxable years beginning after December 31, 1938.

where such property is "being affected by economic conditions that will result in its being abandoned at a future date prior to the end of its normal useful life, so that depreciation deductions alone are insufficient to return the cost (or other basis) at the end of its economic term of usefulness." This Court, without undertaking a comprehensive definition has held that obsolescence for purposes of the revenue acts "may arise from changes in the art, shifting of business centers, loss of trade, inadequacy, supersession, prohibitory laws, and other things which, apart from physical deterioration, operate to cause plant elements or the plant as a whole to suffer diminution in value." *United States Cartridge Co.* v. *United States*, 284 U. S. 511, 516, 52 S. Ct. 243, 245, 76 L. Ed. 431. See, also, *Burnet* v. *Niagara Falls Brewing Co.*. 282 U. S. 648, 654. Such specific examples illustrate the type of "economic conditions" whose effect on physicial property is recognized as obsolesence by the Treasury Regulations. Others could be mentioned which similarly cause or contribute to the relentless march of physical property to the junk pile. But in general, obsolescence under the Act connotes functional depreciation, as it does in accounting and engineering terminology. More than non-use or disuse is necessary to establish it. * * * But not every decision of management to abandon facilities or to discontinue their use gives rise to a claim for obsolescence. For obsolescence under the Act requires that the operative cause of the present or growing uselessness arise from external forces which make it desirable or imperative that the property be replaced. What those operative causes may be will be dependent on a wide variety of factual situations. * * *

We note the Court's quotation from the regulations, and that they provide an allowance for obsolescence where economic conditions will result in property "being abandoned at a future date prior to the end of its normal useful life, so that depreciation deductions alone are insufficient to return the cost (or other basis) at the end of its economic term of usefulness." In our opinion, the petitioner here has altogether failed to make such showing that the depreciation deductions alone are insufficient. Though the special use will terminate at a certain date, the property is neither to be scrapped nor abandoned, and will continue to have economic usefulness, though in a different use.

*Prudential Ins. Co. of America*, 33 B. T. A. 332, also relied upon by the petitioner, involved demolition of the building. In the *Niagara Falls Brewing Co.* case, as pointed out in *Detroit & Windsor Ferry Co.* v. *Woodworth*, 115 Fed. (2d) 795, "the evidence conclusively showed a definitely contemplated abandonment, substantially consummated during the taxable period." In *State Line & Sullivan R. Co.* v. *Phillips*, 98 Fed. (2d) 651, after referring to the *Niagara Falls Brewing Co.* case, and its quotation of obsolescence as, "The condition or process by which units gradually cease to be useful or profitable as a part of the property on account of the changed conditions," the court says, "When obsolescence has occurred property must possess value solely as salvage or scrap." *Olean Times-Herald Corporation*, 37 B. T. A. 922, involved claim for obsolescence for 1933 upon a building especially constructed for a printing plant. Though lack of

evidence contributed to the conclusion that deduction for obsolescence should be denied, we noted that: "Although the building had been constructed especially for a printing plant, it could be put to other commercial uses. A purchaser was found in 1935 who converted it to other uses. * * * It was not abandoned in 1933, but was put up for sale." The situation is remarkably parallel in some particulars with that herein involved. This Court has consistently held that "Obsolescence is a question of fact, to be determined from the evidence in each case." *First National Bank of Key West*, 26 B. T. A. 370, 376.

The purpose of the statute with respect to deductions for depreciation has been expressed by the Supreme Court of the United States in the case of *United States* v. *Ludey*, 274 U. S. 295, as follows: "Depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sum set aside will (with the salvage value) suffice to provide an amount equal to the original cost." Regulations 103, section 19.23 (1)–1, are to the same effect. The statute provides for a deduction for obsolescence in addition to ordinary depreciation to insure the taxpayer that he will be permitted to restore the cost of his property conterminously with the termination of the usefulness of his property. Such a definition of obsolescence is consistent both with the idea expressed in the *Niagara Falls Brewing Co.* case, to wit, that the taxpayer need not show "that his property will be scrapped or cease to be used or useful for any purpose before any allowance may be made for obsolescence" and with the idea expressed in the *Real Estate-Land Title & Trust Co.* case where the Court speaks of "economic conditions, whose effect on physical property is recognized as obsolescence." and "which similarly cause or contribute to the relentless march of physical property to the junk pile." Thus, in a case where there is no abandonment of the property, actual or contemplated, the taxpayer will be allowed a deduction for obsolescence if he sustains the burden of proving that normal deductions for depreciation based upon the original estimated life of the property will be insufficient to restore to him the basis of his property, because the original estimated life of the property has been cut short as a result of the property's having been rendered inutile for the function it performed prior to the event which caused the alleged diminution of value.

Petitioner in the instant case has not shown that the period during which this building will have an useful economic life will be shortened as a result of Western Union's failure to renew its lease. The depreciated cost of this building on December 31, 1943. still to be recovered is $80,725.32. Its residual value, that is, its value as an ordinary warehouse, on December 31. 1943. was $57.750. Its fair rental value on December 31, 1943, as an ordinary warehouse was $8,400 per annum.

There is no evidence that this building was abandoned by petitioner or that it contemplated its abandonment after December 31, 1943. There being no evidence that the useful life of this building as an ordinary warehouse was any shorter than its useful life as a special purpose warehouse, it can not be said that petitioner will be precluded from realizing the restoration of any basis it has by virtue of its annual deductions for depreciation based upon the original estimated life of the building. The decrease in the rate of return and concomitant decline in value of the property due to inability to find a tenant whose business requires the special characteristics of this warehouse do not, under the facts in this case, entitle petitioner to a deduction for obsolescence.

We, therefore, hold that petitioner is not entitled to deduct any amount for obsolescence for the taxable year 1939. The respondent's plea for a reduction of amount of allowance of depreciation was only in the alternative, in case it should be determined that the bonds were not personal obligations of the petitioner. We have not so concluded, but on the other hand have, following the theory of the deficiency notice, considered the bonds as the liability of the petitioner, and have merely, under the special provisions of section 22 (b) (9), allowed a partial exclusion from income; therefore, we do not pass upon the alternative contention. In any event, the burden was upon the respondent to sustain such affirmative plea for increased deficiency, and the record contains no evidence to support it.

*Decision will be entered under Rule 50.*