**KELLER STREET DEVELOPMENT COMPANY, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REV-ENUE, Respondent.**

**No. 18153.**

United States Court of Appeals Ninth Circuit.

Sept. 26, 1963.

James J. Arditto, Los Angeles, Cal., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Carolyn R. Just, and Richard J. Heinman, Attorneys, Department of Justice, Washington, D. C., for respondent.

Before HAMLEY and KOELSCH, Circuit Judges, and CARR, District Judge.

CARR, District Judge.

This is a petition for review of a decision of the Tax Court of the United States (Opinion of Tax Court, 37 T.C. 559). Only two issues are involved: (1) a deduction for obsolescence on a brewhouse and equipment taken by the taxpayer for four taxable years, namely: the fiscal years ending October 31, 1952, October 31, 1953, the short taxable period of November 1, 1953, to December 31, 1953, and the year ending December 31, 1954; (2) a deduction for the taxable year, 1954, for obsolescence on equipment which was stored under tarpaulin.

Since neither petitioner nor respondent contends there was error in the findings of fact, the only concern here is with the correctness of the decision of the Tax Court holding that (1) petitioner was not entitled to the claimed obsolescence deduction for all four years on its brewhouse and equipment; and (2) petitioner was not entitled to the asserted obsolescence deduction for 1954 on its "equipment under tarp."

Petitioner operated a brewery in Los Angeles, California. On December 1, 1952, the State of California began condemnation proceedings to take a portion of the brewery property. The brewery was comprised of two buildings, one, a brew-house and the other, a bottle-house. Both buildings were on a single piece of land but were separated by Aliso Street. A tunnel under the street permitted piping brew from the brew-house to the bottle-house. This was a unified operation and both the brew-house and the bottle-house were essential to the operation of petitioner's business. In August, 1951, it came to the attention of petitioner that the state, in preparing for the Santa Ana Freeway, was contemplating the taking of 18 feet of petitioner's bottle-house. Negotiations ensued, petitioner explaining to the representatives of the state that its brew-house building would be useless without the bottle-house and that the machinery and equipment in both buildings were so adapted to the operation that they would be of little

value unless installed as a unit in a specially constructed building. Representatives of the state indicated that it might be possible for the state to make available as a part of a settlement certain property west of the brew-house which could be used as a bottle-house.

Petitioner had plans prepared for a bottle-house on the state's land west of the brew-house. In December, 1951, petitioner ordered in excess of one-half million dollars' worth of bottle-house machinery and equipment which was to be specially designed for the new bottle-house.

Although negotiations continued, no settlement was reached. In early 1952, petitioner, having learned that the state had already made a commitment to others for the land west of the brew-house, acquired a parcel east of its brew-house. The petitioner learned that the state intended taking part of this parcel which would not leave enough land for a bottle-house. Petitioner thereupon concluded that it would be impossible to acquire land for a bottle-house in reasonable proximity to the brew-house.

Petitioner's officers decided that the only course of action remaining was to build a bottle-house on a 5-acre tract some distance from petitioner's existing facilities. Petitioner could have operated its bottling facility there for a short period, but it was not economically feasible to do so for an extended period. It was, therefore, determined to build a new brew-house on the 5-acre tract which was to be done by 1956.

The complaint of the state, filed December 1, 1952, sought to take a part of the bottle-house, but an amended complaint, filed April 9, 1954, did not include in the proposed taking either the bottle-house or the brew-house property, but only the access rights along the proposed freeway.

Negotiations continued until 1956 without settlement. Payment was made for the land in accordance with a judgment of condemnation in 1956.

After acquisition of the 5-acre tract, petitioner did some work clearing the old structures and substructures. Plans were drawn for a beer tunnel and an easement was obtained across the intervening land. Nothing further was done toward construction of a new brewery because petitioner's attorney advised such action might prejudice petitioner in its negotiations with the state. No plans were prepared for a new brew-house.

In 1952, the officers of the petitioner decided that a new brew-house would be in operation by July, 1956, and that the present brew-house, together with its machinery and equipment would have no useful life beyond that date. The petitioner, therefore, deducted an amount for obsolescence computed on this basis for the four taxable years heretofore mentioned.

During 1954, several producers of nationally advertised beer established breweries in the Los Angeles area. Their competition brought about a substantial reduction in the gross sales of petitioner and resulted in the loss of most of its distributors to other brewers. In October, 1954, petitioner's officers determined that they would have to abandon plans for the construction of a new brewery.

In 1956, petitioner filed an amended income tax return for 1954 in which it reduced its obsolescence in part claimed on the brew-house, its machinery, and equipment. Also in this amended return petitioner claimed an obsolescence deduction for the machinery and equipment bought for a new bottle-house which was rendered useless by the decision that a new brewery could not be built. This machinery had not been used with minor exceptions, but was stored under tarpaulin.

The Tax Court held: (1) that the taxpayer was not entitled to the deductions during the taxable years from 1951 to 1954, inclusive, for obsolescence on its brew-house building and equipment under Section 23(*l*) of the Internal Revenue Code of 1939 and Section 167(a) of the Internal Revenue Code of 1954 (Sec. 167

(a), Title 26 U.S.C.A.); and (2) that it was not entitled to an obsolescence deduction for 1954 under Section 167(a) of the Internal Revenue Code of 1954 (Sec. 167(a), Title 26 U.S.C.A.), on the new and used machinery bought for a new bottle-house, referred to as "equipment under tarp."[1] Applicable Treasury Regulations are found in Footnote 2.

The Tax Court's decision as to the brew-house and its equipment was predicated upon the theory that a threat of condemnation in which compensation would be given for damage to a plant and its equipment cannot give rise to an obsolescence deduction on that plant and equipment. Citing: Olean Times-Herald Corporation, 37 B.T.A. 922 (1938); Southeastern Building Corporation, 3 T. C. 381 (1944), affd., 5 Cir., 148 F.2d 879, 160 A.L.R. 1245 (1945), cert. den., 326 U.S. 740, 66 S.Ct. 52, 90 L.Ed. 442 (1945). The Tax Court pointed out that, if the state were to injure one portion of petitioner's land by taking another, it would be required to reimburse the petitioner for the damage done. Thus, if, as petitioner contends, its brew-house and

1. Internal Revenue Code of 1939:
    "§ 23. Deductions from gross income.
    "In computing net income there shall be allowed as deductions:
    *        *        *        *        *
    "(l) [as amended by Sec. 121(c), Revenue Act of 1942, c. 619, 56 Stat. 798] Depreciation. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
    "(1) of property used in the trade or business, or
    "(2) of property held for the production of income."
    (26 U.S.C. 1952 ed., § 23.)
    Internal Revenue Code of 1954:
    "§ 167. Depreciation
    "(a) General Rule.—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
    "(1) of property used in the trade or business, or
    "(2) of property held for the production of income."
    (26 U.S.C.1958 ed., § 167.)

2. Treasury Regulations 118 (1939 Code):
    "Sec. 39.23(1)–6 Obsolescence. With respect to physical property the whole or any portion of which is clearly shown by the taxpayer as being affected by economic conditions that will result in its being abandoned at a future date prior to the end of its normal useful life, so that depreciation deductions alone are insufficient to return the cost or other basis at the end of its economic term of usefulness, a reasonable deduction for obsolescence, in addition to depreciation, may be allowed in accordance with the facts obtaining with respect to each item of property concerning which a claim for obsolescence is made. No deduction for obsolescence will be permitted merely because, in the opinion of the taxpayer, the property may become obsolete at some later date. This allowance will be confined to such portion of the property on which obsolescence is definitely shown to be be sustained and cannot be held applicable to an entire property unless all portions thereof are affected by the conditions to which obsolescence is found to be due."

    Treasury Regulations on Income Tax (1954 Code): "Sec. 1.167(a)–9 Obsolescence.

    "The depreciation allowance includes an allowance for normal obsolescence which should be taken into account to the extent that the expected useful life of property will be shortened by reason thereof. Obsolescence may render an asset economically useless to the taxpayer regardless of its physical condition. Obsolescence is attributable to many causes, including technological improvements and reasonably foreseeable economic changes. Among these causes are normal progress of the arts and sciences, supersession or inadequacy brought about by developments in the industry, products, methods, markets, sources of supply, and other like changes, and legislative or regulatory action. In any case in which the taxpayer shows that the estimated useful life previously used should be shortened by reason of obsolescence greater than had been assumed in computing such estimated useful life, a change to a new and shorter estimated useful life computed in accordance with such showing will be permitted. No such change will be permitted merely because in the unsupported opinion of the taxpayer the property may be become obsolete. For rules governing the allowance of a loss when the usefulness of depreciable property is suddenly terminated, see § 1.167(a)–8. If the estimated useful life and the depreciation rates have been the subject of a previous agreement, see section 167(d) and § 1.167(d)–1."

equipment would have been rendered useless because of the taking of a portion of the bottle-house, the State of California would have been required to compensate for the loss of value of the brew-house and its equipment, particularly where the equipment was specially adapted to the building. That the law of California provides for such compensation is unquestioned.

Cal.Code Civ.Proc. Sec. 1248:

"The court, jury, or referee must hear such legal testimony as may be offered by any of the parties to the proceedings, and thereupon must ascertain and assess:

"1. Value. The value of the property sought to be condemned, and all improvements thereon pertaining to the realty, * * *

"2. Severance damages. * * * the damages which will accrue to the portion not sought to be condemned, by reason of its severance from the portion sought to be condemned, * * * *"

City of Los Angeles v. Klinker, 219 Cal. 198, 25 P.2d 826, 90 A.L.R. 148 (1933); City of Beverly Hills v. Albright, 184 Cal. App.2d 562, 7 Cal.Rptr. 706 (1960); People v. Klopstock, 24 Cal.2d 897, 151 P.2d 641 (1944).

■ The Tax Court's decision respecting a threat of condemnation appears to be supported by both law and reason. In a case of condemnation, it is to be assumed that petitioner would recover the market value of the condemned property including equipment. Thus, it is most likely that the amount recovered might well exceed the cost or basis of the property, leaving nothing to be recouped by way of depreciation or obsolescence. Only in a case where the compensation was below the cost or basis of the property taken would there arise an exceptional situation which might give rise to obsolescence. Since it would be impossible for a taxpayer to ascertain or establish the new cost or basis until after the condemnation award, it necessarily follows that it would be impossible to ascertain or establish the amount of obsolescence in such a situation.

In this case it might be that petitioner would have been able to recover the market value of the capital assets in question although the state abandoned condemnation of the bottle-house. See: Times-Mirror Co. v. Superior Court, 3 Cal.2d 309, 44 P.2d 547 (1935), where the Supreme Court of California held that a municipality is estopped from abandoning condemnation proceedings, which abandonment was prompted by the municipality's desire to avoid the payment of compensation, when the active threat of condemnation had been existing for a sustained period of time and the property owner had justifiably acted upon the imminent prospect of condemnation by purchasing other replacement property. If such a recovery were possible, again there would arise the question as to what would be the new cost or basis for the property in the computation of the obsolescence deduction.

The record in this case fully sustains the Tax Court's conclusion that petitioner failed to establish his right to the deduction for obsolescence on the brew-house and equipment for the years claimed.

Petitioner contends that the Tax Court erred in considering "the effect of a condemnation award" because such issue was not raised during the trial. The effect of the threatened condemnation proceedings was inherent in the case. Furthermore, the record does not indicate that the petitioner was in any way precluded from dealing with this issue at the trial if it so desired. Petitioner asserts that it was not given an opportunity or required to produce evidence that the representatives of the state were contending that most of the equipment in the brew-house was personal property and that petitioner would not have been compensated for such property; also, that most of the machinery and equipment in the brew-house would qualify as personal property. Our holding appears to dispose of this assigned error. However, it is to be noted that the record

does not disclose that petitioner was precluded from presenting evidence or that petitioner made any effort to offer proof in this connection. Petitioner's complaint that it was not required to produce evidence is completely without substance since the Tax Court, as any other court, does not ordinarily undertake to require the production of evidence by the litigants.

The next question for consideration is the Tax Court's decision in disallowing the obsolescence deduction for 1954 on the "equipment under tarp." That decision was based chiefly upon the theory that an obsolescence deduction is available only where property becomes useless over a period greater than one year. The case of W. B. Davis & Son, Inc., 5 T.C. 1195 (1945), was relied upon to support the decision.

The Tax Court also stated that "The question whether the remaining basis" might be deducted was not before that court since petitioner did not seek a loss deduction for the equipment either in its tax return or its petition. Apparently the Tax Court had in mind Section 165 of Title 26 U.S.C.A., for it then noted that such a loss was not allowable since petitioner had not shown that "the property was discarded, abandoned, sold, or otherwise retired during the taxable year."

In order to sustain the conclusion of the Tax Court, it would be necessary to disregard an unequivocal decision of this court in 1931 that an obsolescence deduction may be available although the property became useless within one taxable year. In Moise v. Burnet, 9 Cir., 1931, 52 F.2d 1071, this court reversed a decision of the Board of Tax Appeals which had upheld the commissioner's disallowance of a deduction of a taxpayer engaged in the liquor business for a building, furniture and fixtures which became obsolete in the year, 1918, because of the National Prohibition Act. This court upheld the taxpayer's claim for a deduction for obsolescence despite the fact that it occurred wholly within one year. The holding was the same in Plymouth Brewing & Malting Co., 16 B.T.A. 123 (1929); United States v. Wagner Electric Mfg. Co., 8 Cir., 1932, 61 F.2d 204. Only one of the above three cases was cited in the briefs before this court, and that was merely for the proposition that obsolescence need not be proved to a mathematical certainty. In Wagner Electric Mfg. Co., the Eighth Circuit permitted a munitions manufacturer obsolescence deductions under the Revenue Act of 1918 of the entire value (less scrap value) of certain machinery and equipment used in the manufacturing of shells in the tax year of 1918, the year in which the Armistice was signed terminating World War I and the year in which the United States Government requested that the taxpayer terminate its shell manufacturing operations under its war contract.

The rule enunciated by this court allowing an obsolescence deduction when the property becomes useless within the period of one taxable year would appear to be based upon sound reason. The Supreme Court has defined obsolescence within the meaning of the Internal Revenue Code as being functional depreciation with the operative cause of the present or growing uselessness arising from external forces which make it desirable or imperative that the property be replaced. Real Estate Land Title & Trust Co. v. United States, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542 (1940).

> "The purpose of allowing a deduction for obsolescence is to permit the taxpayer a return of his capital out of earnings over the economic useful life of the property notwithstanding its possibly longer physical life or ordinarily useful life. The foundation for obsolescence is the expected early abandonment of the property which for this purpose means the scrapping of the property and not the sale, at a time when it had substantial value * * *". Mertens, Law of Federal Income Taxation, Vol. 4, § 23.102, at 210 (rev. ed., 1960).

See also: Bradley v. Commissioner of Internal Revenue, 7 Cir., 1950, 184 F.2d 860. It is conceivable that an external force may arise within a single taxable period which will cause the sudden uselessness of a business asset. There is no compelling logic persuading this court to formulate a rule which would permit the allowance of an obsolescence deduction when the process of growing useless occurs over a thirteen month period but which would require the disallowance of such a deduction if the process of growing useless occurs within a twelve-month period. The taxpayer should be permitted to recoup the capital expended for the property out of its earnings during the period in which the property grows useless regardless of the length of that time period.

In the decision below, the Tax Court relied upon its previous decision in W. B. Davis & Son, Inc., 5 T.C. 1195 (1945), in disallowing the obsolescence deduction for the "equipment under tarp." In that case, the Tax Court relied upon four cases in reaching its conclusion that the allowance for obsolescence is for capital losses which take place over a period of time embracing more than a single taxable year. In William Zakon, 7 B.T.A. 687 at page 690 (1927), the Board of Tax Appeals decided without legal precedent or by articulated statements of reason that the provision of the Revenue Act of 1918 which is the predecessor of Section 167 of the 1954 Code "indicates that it is intended to care for losses of capital which took place over a longer period than the taxable year." However, in William Zakon, the Board of Tax Appeals did permit a loss to be taken under the 1918 predecessor of Section 165 of the 1954 Code for the loss of value of a liquor license in 1919 due to the National Prohibition Act. In Tennessee Fibre Co., 15 B.T.A. 133 (1929), although the Board cited William Zakon, supra, for the proposition that the obsolescence deduction is intended to care for losses of capital which take place over a longer period than the taxable year, the Board held that the taxpayer did not have a right to take an obsolescence deduction because the facts demonstrated that the property in question was not worthless in the taxable year involved and thus any reference to William Zakon and the necessary time period for an obsolescence deduction was dictum. In Olean Times-Herald Corporation, 37 B.T.A. 922 (1938), the Board, by way of dictum, referred to the proposition that the obsolescence deduction is intended for losses of capital which occur for a period in excess of one year and cited the two cases above. However, the Board held that the facts showed that the property in question did not become worthless in the taxable year involved. The final case which the Tax Courts cites in W. B. Davis & Son, Inc., is Becker v. Anheuser-Busch, Inc., 8 Cir., 1941, 120 F.2d 403. In that case, although the Court of Appeals did draw some distinctions between the 1924 and 1926 Revenue Act provisions which preceded Sections 167 and 165 of the 1954 Code, the court held that the taxpayers were not allowed obsolescence deductions in the taxable years, 1924 and 1925, in the amounts claimed because the obsolescence in question was a continuous process beginning in the year, 1918, and the taxpayers failed to adopt a reasonably consistent plan to account for this obsolescence.

The court pointed out in its opinion on page 418 of 120 F.2d that the losses in value that were claimed by the taxpayers were the type for which obsolescence deductions were plainly authorized by the predecessor provision to Section 167 *if* they were spread over the years in accordance with a reasonably consistent plan. The court cited and distinguished Moise v. Burnet, supra; Plymouth Brewing & Malting Co., supra, and United States v. Wagner Electric Mfg. Co., supra, by stating that in those cases the taxpayer had, in fact, adopted a reasonably consistent plan in claiming its obsolescence deductions. The Court of Appeals for the Eighth Circuit did not question its earlier decision in United States v. Wagner Electric Mfg. Co., supra, which had held that a taxpayer was per-

mitted to deduct in a single tax year the value of certain munitions manufacturing equipment and machinery as an obsolescence deduction because of the signing of the Armistice of 1918.

Keeping in mind that Section 167, formerly 23(l), of the 1939 Internal Revenue Code has remained substantially the same, we find the Treasury Regulations apparently shifting in such a way as to obscure their meaning and make them of little help in interpreting the section in question. In 1942, it could be concluded from Bulletin "F" (revised January, 1942) that obsolescence could occur at practically any time.[3]

Under Treasury Regulation Section 1.167(a)–9 (Obsolescence), promulgated in 1956 and applicable to the 1954 Code, a cross-reference was made to Section 165 (Loss) when the usefulness of an asset was suddenly terminated.[4] However, the original regulation on "Retirements" under the 1954 Code provided for an allowance under Section 167 on account of retirement of an asset when it had "lost its usefulness suddenly as a result of extraordinary obsolescence." See Treasury Regulation Section 1.167 (a)–8(b) (1956).

Under both the 1956 and 1960 Regulations, Section 1.167(a)–9 (Obsolescence), the obsolescence deduction might be computed on a "new and shorter estimated useful life" with no time limit indicated.[5]

While the 1960 Regulations were subsequent to the tax years here involved, it is interesting to note that Regulation Section 1.165–2(c) (Losses) provided for the allowance under Section 165(a) for losses arising from permanent "withdrawal of depreciable property from use in trade or business" and cross-reference was made to Section 1.167(a)–9 (Obsolescence of Depreciable Property).[6] It should be noted that the 1960 Regulation Section 1.165–2(b) (Losses) excluded depreciable property.[7]

In Mertens' Law of Federal Income Taxation, Volume 4, Section 23.108, at page 221, it is stated:

"In fact, under the Regulations promulgated under the 1954 Code, 'extraordinary or special' obsolescence, and the allowance for a loss would appear to be identical."

The foregoing review of the Treasury Regulations appears to demonstrate that

---

3. "Extraordinary or special obsolescence rarely can be predicted prior to its occurrence. However, this does not necessarily imply that the asset already must have been completely discarded or become useless, but merely that a point has been reached where it can be definitely predicted that its use for its present purpose will be discontinued at a certain future date. Deductions for obsolescence of this type may be taken over the period beginning with the time such obsolescence is apparent and ending with the time the property will become obsolete. * * * [Bulletin 'F' (Revised January, 1942)]"

4. "For rules governing the allowance of a loss when the usefulness of an asset is suddenly terminated, see section 165 and the regulations thereunder." Treas. Reg. § 1.167(a)–9 (1956).

5. "In any case in which the taxpayer shows that the estimated useful life previously used should be shortened by reason of obsolescence greater than had been assumed in computing such estimated useful life, a change to a new and shorter estimated useful life computed in ac-

cordance with such showing will be permitted." (Treas.Reg. § 1.167(a)–9 (1956) and Treas.Reg. § 1.167(a)–(9) (1960).

6. "Cross references. For the allowance under section 165(a) of losses arising from the permanent withdrawal of depreciable property from use in the trade or business or in the production of income, see § 1.167(a)–8. For provisions respecting the obsolescence of depreciable property, see § 1.167(a)–9. For the allowance of casualty losses, see § 1.165–7." Treas. Reg. § 1.165–2(c) (1960).

7. "(b) Exceptions. This section does not apply to losses sustained upon the sale or exchange of property, losses sustained upon the obsolescence or worthlessness of depreciable property, casualty losses, or losses reflected in inventories required to be taken under section 471. The limitations contained in sections 1211 and 1212 upon losses from the sale or exchange of capital assets do not apply to losses allowable under this section." Treas.Reg. § 1.165–2(b) (1960).

nowhere is there a definite indication of an interpretation that obsolescence must not occur wholly within one year; nor can it be said that the Regulations clearly point up the distinction between Sections 165 and 167 of the Internal Revenue Code.

It would thus appear that the question regarding the "equipment under tarp" is simply a question of whether or not such equipment became obsolete within one year. As was said by the Supreme Court:

> "Obsolescence may arise as the result of laws regulating or forbidding the particular use of the property as well as from changes in the art, the shifting of business centers, *loss of trade,* inadequacy or other causes." Burnet v. Niagara Brewing Co., 282 U.S. 648, 654, 51 S.Ct. 262, 264–265, 75 L.Ed. 594 (1931) [Emphasis supplied.]

The findings of the Tax Court disclose that the taxpayer's abandonment of its plans to build a new brewery was primarily due to the establishment in 1954 of several breweries in the Los Angeles area by nationally advertised beer producers with the result that these national producers were able to sell their beer at local prices causing petitioner to lose most of his distributors. This caused a sharp reduction of the taxpayer's sales, a "loss of trade" such as is contemplated by Section 167. The abandonment of the expansion plans was, of course, the primary cause of the involuntary but permanent retirement of the "equipment under tarp" which had been purchased for installment in the planned new bottle-house. On the other hand, the evidence in the Record fully supports the contention of the taxpayer that the specially constructed machinery could not be adapted for other purposes by the taxpayer and that in fact it had no market value, except for scrap, because of its special design. For these reasons, the taxpayer should be allowed the obsolescence deduction for the "equipment under tarp" and the Tax Court's disallow-ance of such deduction for 1954 was erroneous.

The decision of the Tax Court is affirmed in disallowing the obsolescence deduction on the brew-house and equipment for the years in question and reversed in disallowing the deduction for obsolescence on the "equipment under tarp" for the year, 1954.