EDWARD F. BRYLAWSKI AND LAURA C. BRYLAWSKI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brylawski v. Commissioner
Docket No. 10658-80.
United States Tax Court
T.C. Memo 1983-622; 1983 Tax Ct. Memo LEXIS 166; 47 T.C.M. (CCH) 2; T.C.M. (RIA) 83622; October 4, 1983. Arthur K. Mason and Reuben B. Robertson, for the petitioners. Lawrence D. Garr, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: Respondent determined a deficiency of $54,982.74 in petitioners' Federal income tax for the taxable year 1976. After concessions by the parties, the issues *167 for decision are (1) whether petitioners properly shortened the useful lives of certain properties because of alleged obsolescence, thereby increasing their depreciation deduction; and, if so, (2) whether this deductioin must be offset by the salvage value, if any, of those properties. This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and joint exhibits are incorporated herein by this reference. The pertinent facts are summarized below. Edward F. and Laura C. Brylawski [1] (petitioners) were legal residents of Bethesda, Maryland, at the time they filed their petition in this case. They timely filed a joint Federal income tax return for 1976 with the Internal Revenue Service Center in Philadelphia, Pennsylvania. Petitioner owned eight properties at the intersection of Pennsylvania Avenue and 11th Street, N.W., in Washington, D.C. He purchased these properties in the early 1960's and used them for rental purposes in the ordinary course *168 of his trade or business. In 1974, petitioner learned that his Washington properties were included in the development area under the jurisdiction of the Pennsylvania Avenue Development Corporation (PADC). PADC was a corporation created by Congress [2] and vested with condemnation powers to promote and to assure the construction of new buildings in the development area of Pennsylvania Avenue. Petitioner was informed in August, 1974, that his properties would be purchased for redevelopment either by a private developer or, if necessary, by PADC. Petitioner was also informed that initial acquisitions by PADC could begin as early as July, 1975, but would probably not occur before 1976. Petitioner received a copy of PADC's development plan, which described his buildings as low-scale structures with little architectural merit and implied that major redevelopment would be required of the buildings, i.e., demolition and reconstruction, in order to completely utilize the airspace above the buildings. *169 As a result of these developments, petitioner concluded in 1975 that his buildings were no longer of any use or value to him. Accordingly, beginning with his 1975 [3] return, he changed the remaining useful lives of his buildings to reflect total obsolesence by December 31, 1979. The original useful lives of these buildings as agreed upon by the parties were as follows: AGREED
LOCATION
USEFUL LIVES
411-413 11th Street, N.W.
40
415-417 11th Street, N.W.
35
409 11th Street, N.W.
30
407 11th Street, N.W.
20
1009 Pennsylvania Avenue, N.W.
25
401-405 11th Street, N.W.
25
1011 Pennsylvania Avenue, N.W.
20
1013 Pennsylvania Avenue, N.W.
20
In July, 1978, PADC informed petitioner that a private developer was redeveloping an area of Pennsylvania Avenue that included his properties. Petitioner was further informed that if his properties were not purchased by the developer, then PADC was prepared to acquire them by negotiation or condemnation. Petitioner sold his property to the developer in January, 1979. Petitioner and the *170 developer computed the purchase price for the properties by multiplying the number of square feet of land in each lot by an agreed upon dollar amount representing the value of each square foot of land. In negotiating the purchase price, petitioner and the developer did not consider the value of the buildings as adding to the value of the property. In his notice of deficiency, respondent adjusted the petitioner's deductions for depreciation on the basis that petitioner was not entitled to shorten the useful lives of his properties, thereby creating a deduction for obsolescence. Petitioner contends that his rental properties suffered obsolescence as a result of congressional legislation establishing PADC and providing for comprehensive redevelopment of the area in which his properties were located. Petitioner contends that the PADC plan provided for demolition of his properties within a brief period of time. His properties were to be purchased either directly by PADC through negotiation or condemnation, or by a private developer. Petitioner contends that the threat of condemnation facing his buildings made them less attractive to potential lessees and hence, less valuable. Petitioner *171 concludes that an adjustment of the buildings' useful lives was appropriate. Respondent contends that the PADC plan was so indefinite and uncertain that it represented no more than a mere possibility that, at some future date, PADC would exercise its power of eminent domain and purchase petitioner's properties. Respondent asserts that petitioner was free to sell his properties, to submit a development plan of his own to PADC, or to demand just compensation. Respondent concludes that petitioner acted improperly in shortening the useful lives of his buildings, which resulted in an inappropriate obsolescence deduction. Section 167(a) [4] allows as a deduction a reasonable allowance for the exhaustion, wear and tear, including a reasonable allowance for obsolescence, of property used in a trade or business. What constitutes a "reasonable allowance" is defined in section 1.167(a)-1(a), Income Tax Regs., which provides as follows: § 1.167(a)-1. DEPRECIATION IN GENERAL. (a) REASONABLE ALLOWANCE. Section 167 (a) provides *172 that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in the trade or business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction. The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set aside, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property as provided in section 167(g) and § 1.167(g)-1. * * * The useful life of property for purposes of depreciation, is defined in section 1.167(a)-1(b), Income Tax Regs., as "not necessarily the useful life inherent in the asset but * * * the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business * * *." This requires a focus on an individual taxpayer's use of a particular asset, instead of the "full abstract economic life of the asset in any business." Massey Motors, Inc. v. United States,364 U.S. 92, 97 (1960). Section 1.167(a)-1(b), *173 Income Tax Regs., further provides as follows: This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic charges, inventions and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. Salvage value is not a factor for the purpose of determining useful life. If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be *174 redetermined only when the change in the useful life is significant and there is a clear and convincing basis for the redetermination. * * * Section 1.167(a)-9, Income Tax Regs., discusses the allowance for obsolescence as follows: The depreciation allowance includes an allowance for normal obsolescence which should be taken into account to the extent that the expected useful life of property will be shortened by reason thereof. Obsolescence may render an asset economically useless to the taxpayer regardless of its physical condition. Obsolescence is attributable to many causes, including technological improvements and reasonably foreseeable economic changes. Among these causes are normal progress of the arts and sciences, supersession or inadequacy brought about by developments in the industry, products, methods, markets, sources of supply, and other like changes, and legislative or regulatory action. In any case in which the taxpayer shows that the estimated useful life previously used should be shortened by reason of obsolescence greater than had been assumed in computing such estimated useful life, a change to a new and shorter estimated useful life computed in accordance *175 with such showing will be permitted. * * * Determinations as to the proper useful lives of the properties and the reasonableness of the petitioner's depreciation deductions are questions of fact. Matson Navigation Co. v. Commissioner,67 T.C. 938, 944 (1977); Casey v. Commissioner,38 T.C. 357, 381 (1962). Respondent's determination as to the amount of depreciation allowable for the year in issue is presumptively correct and the burden of proof rests with petitioner to prove that the determination is erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); Bell Electric Co. v. Commissioner,45 T.C. 158, 167 (1965); Dunn v. Commissioner,42 T.C. 490, 494 (1964); Rule 142(a), Tax Court Rules of Practice and Procedure.
In contrast to the allowance for exhaustion, wear and tear, which is an allowance for use of an asset, obsolescence is an allowance for discuse. Renziehausen v. Lucas,280 U.S. 387 (1930). An allowance for obsolescence provides a taxpayer with the opportunity to recover the cost of an asset by proving that normal depreciation deductions will be insufficient to recover *176 basis, because the asset's life has been shortened by reason of its having been rendered inutile for the function it once performed. Southeastern Building Corp. v. Commissioner,3 T.C. 381, 389 (1944), affd. 148 F.2d 879 (5th Cir. 1945). To support a deduction for obsolesence, a taxpayer must establish (1) the normal useful lives of his properties and (2) that the properties will become obsolete before their useful lives expire. Zimmerman v. Commissioner,67 T.C. 94, 107 (1976); Dunn v. Commissioner,supra. More than an indefinite expectation or supposition is needed. See Southeastern Building Corp. v. Commissioner,supra.But the taxpayer is not required to be an "incorrigible optimist." 4 Mertens, Law of Federal Income Taxation, sec. 23.123, p. 361 (1980 rev.). Regulation of private property by governmental powers has long been recognized as a source of obsolescence. Burnet v. Niagara Falls Brewing Co.,282 U.S. 648 (1931); see section 1.167(a)-9, Income Tax Regs. In Burnet v. Niagara Falls Brewing Co., the taxpayer was allowed a deduction (under section 234(a)(7), *177 Revenue Act of 1918, ch. 18, 40 Stat. 1057, 1078) [5] for obsolescence of its buildings, machinery and equipment that it used in its brewery business. The obsolescence was caused by the prohibition. Due to prohibition, the taxpayer would have found it practically impossible to sell the brewery property for more than a fraction of its value or find another use to which it could profitably be put. In the instant case, petitioner was informed in August, 1974, that his Washington properties were targeted for development by PADC. These properties carried original useful lives ranging from 20 to 40 years. Petitioner was advised by PADC that within a relatively short period of time he would have to carry out the redevelopment of these properties, sell them to a private developer approved by PADC, or ultimately face condemnation. Accordingly, petitioner concluded that his *178 buildings had sustained obsolescence because of legislative or regulatory action, and would have no value by 1979. See section 1.167(a)-9, Income Tax Regs. We agree with petitioner's conclusion. Like the taxpayer in Burnet v. Niagara Falls Brewing Co., the petitioner found it practically impossible to sell his buildings for more than a fraction of their value or find another use to which they could profitably be put. Respondent, however, contends that petitioner is not entitled to an obsolescence deduction because PADC's development schedule was unclear. We disagree. Petitioner received notification that PADC, an organization supported and sanctioned by the Federal government, planned to redevelop his properties. PADC was vested with comprehensive planning and regulatory powers, including the power of eminent domain. Accordingly, upon learning of PADC's redevelopment plans, petitioner assumed, in our view, quite naturally and correctly, that his buildings were doomed. He therefore recomputed their useful lives.Petitioner concluded that his buildings would be obsolete for his purposes by the end of 1979. [6]
*179 Respondent contends that an obsolescence deduction overcompensates petitioner. Respondent further contends that there were several alternatives available to petitioner that would have provided him with adequate compensation. Respondent suggests that petitioner could have sold his properties; or purchased additional properties and submitted a development proposal to PADC; or demanded just compensation for his properties if PADC exercised its power of eminent domain. We reject these alternatives because they ignore the realities that confronted petitioner when his properties were included in PADC's redevelopment area. At that point petitioner's properties faced the imminent threat of condemnation. It was only a matter of time before the buildings would be demolished. The threat of condemnation decreased the value of his properties and made them less desirable to potential lessees, who would not want to begin a new business knowing that they would soon be closed by condemnation. See Beneson v. United States,548 F.2d 939 (Ct. Cl. 1977), wherein the court discusses the economic impact that the "Federal presence" has on an area, stunting growth and prompting a decline *180 in property values.Petitioner could have sold his properties, but it is unlikely that he would have recovered their bases due to the fact that the land was facing condemnation and also that petitioner was in a poor bargaining position, i.e., he needed to sell the properties quickly. We also refuse to force upon petitioner the burden of purchasing additional properties and submitting a redevelopment plan to PADC. Moreover, petitioner may have lacked the capital to carry out such an endeavor.
Respondent's contention that petitioner should have waited for PADC to condemn the properties and then demanded just compensation also ignores the realities of the situation.While petitioner would have received compensation according to the applicable law, he would have received only the fair market value of the properties at the date of the taking. D.C. Code Ann. secs. 16-1358 and 16-1360 (1981). Any decline in the value of the properties due to the threat of condemnation would not be considered. Hence, petitioner would have been undercompensated for his properties. Respondent urges this Court to regard its decision in Keller Street Development Co. v. Commissioner,37 T.C. 559 (1961), *181 affd. in part 323 F.2d 166 (9th Cir. 1963), as controlling in the instant case. We disagree. In Keller Street Development Co., the taxpayer operated a brewery and bottling plant in California. The state began a condemnation proceeding to take part of the taxpayer's property for highway purposes. The taxpayer claimed an obsolescence deduction for the alleged uselessness of the remainder of the brewery. This Court denied the taxpayer a deduction for obsolescence noting that the plant and equipment had substantial value during the taxable years involved and that the plant was still in operation several years later. In contrast, the petitioner's buildings in this case had no value but were instead targeted for demolition. Also, when petitioner sold his properties, the sales price was computed solely upon land value. In Keller Street Development Co.,supra at 567, this Court stated the following: It is recognized that there may be situations in which improvements on property which is threatened by condemnation may not be compensated for because they add nothing to the market value of the land. There may, nevertheless, be a substantial remaining *182 basis for these improvements. In such a case, use of the obsolescence deduction may be appropriate. We think that in this case the obsolescence deduction is appropriate. We have considered the remainder of respondent's contentions and find them equally unpersuasive. In conclusion, we hold that petitioner properly shortened the useful lives of his properties and is entitled to an obsolescence deduction. We now turn to the question of whether petitioner's deduction for obsolescence must be offset by the salvage value, if any, of the buildings involved. It is clear that if petitioner's buildings have any salvage value, this value must be used to offset the obsolescence deduction. Section 1.167(a)-1(c)(1), Income Tax Regs.
However, petitioner has shown that no value was assigned to the buildings themselves when the properties were sold to a private developer. PADC's plan of development contemplated the complete demolition of the buildings. [7] Even assuming that the demolished buildings had any salvage value at all, we think that, on the facts of this case, the cost of removal would have exceeded such value. *183 For these reasons we hold that the salvage value of the petitioner's buildings is zero. Accordingly, petitioner's deduction for obsolescence is sustained in full. To give effect to concessions of the parties and our disposition of the disputed issues, Decision will be entered under Rule 155.
Footnotes
1. Because petitioner Edward F. Brylawski owned the properties involved in this case, references to petitioner are intended to refer to Edward F. Brylawski.↩
2. PADC was authorized by statute to establish such restrictions, standards and requirements as are necessary to assure development, maintenance and protection of the development area in accordance with the development plan. PADC Act, 40 U.S.C. sec. 875(8) (1976). Also, after October 1, 1974, any substantial remodeling, conversion, rebuilding or major structural improvement of existing buildings within the redevelopment zone, had to be approved by PADC. 40 U.S.C. sec. 876(b) (1976)↩.
3. Respondent did not contest the change in 1975. Hence, the only matter before this Court is petitioners' 1976 return.↩
4. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue.↩
5. Sec. 234.(a) that in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * * (7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence;↩
6. The accuracy of his conclusion is demonstrated by hindsight. In early 1979 petitioner sold the Washington properties to PADC's private developer under threat of condemnation.↩
7. As of the date of this opinion, all of petitioner's buildings have been demolished.↩