Olson O. SAYRE and Linna Sayre,
Plaintiffs,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 890.

United States District Court
S. D. West Virginia,
at Huntington.

June 18, 1958.

Roger K. Powell, Columbus, Ohio, Philip A. Baer, Huntington, W. Va., for plaintiffs.

Duncan W. Daugherty, U. S. Atty., Huntington, W. Va., William F. Kolbe, Atty., Dept. of Justice, Washington, D. C., for defendant.

HARRY E. WATKINS, District Judge.

Defendant collected federal income taxes from the plaintiffs for the year 1951 based upon a determination by defendant that in that year plaintiffs realized a capital gain in the amount of $67,-013.19 from the sale of a farm. Plaintiffs here seek a refund of a portion of the taxes paid pursuant to that determination, claiming the determination was erroneous and improper. Plaintiffs contend their disposition of a farm took the form of a tax-free exchange. All issues of fact in the case were submitted to a jury, which after hearing the evidence, answered special interrogatories in favor of the plaintiffs. Defendant's "Motion for Judgment Notwithstanding the Jury's Answers to Interrogatories" has been denied, and the only matter remaining in the case is a question of law.

Taking the findings of the jury along with certain admitted and stipulated facts, the case may be briefly stated as follows: In 1951, the taxpayer-plaintiffs exchanged their West Virginia farm and principal residence, having a combined market value of $90,200 and a basis for tax purposes of $45,000, for an Ohio farm, worth $75,000, and received $15,-200 cash "boot" in the exchange. The taxpayers' principal residence on the West Virginia farm had a fair market value of $9,000 at the time of the exchange. Within twelve months thereafter, taxpayers reinvested in excess of $9,000 in a new principal residence at New Haven, West Virginia.

Assuming the transaction took the form of an exchange (as decided by the jury), the parties agree that the trading of farms would be a tax-free exchange of property held for productive purposes under Section 112(b) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 112(b) (1), except that realized gain which takes the form of cash, termed "boot," is recognized for tax purposes under Section 112(c) (1) of the same Act. Therefore, the $15,200 "boot" received by these plaintiffs would undeniably be taxable if there were no complication brought about by the sale or exchange of taxpayers' principal residence.

Plaintiffs urge that they sold their old residence, which was on the West Virginia farm, for $9,000 of the $15,200 boot, and that they reinvested over $9,000 in a new principal residence within one year, so as to come within the provisions of Section 112(n) of the Internal Revenue Code of 1939, which reads:

"(1) Nonrecognition of gain. If property (hereinafter in this subsection called 'old residence') used by the taxpayer as his principal residence is sold by him and, within a period beginning one year prior to the date of such sale and ending one year after such date, property (hereinafter in this subsection called 'new residence') is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's selling price of the old residence exceeds the taxpayer's cost of purchasing the new residence.

"(2) Rules for application of subsection. For the purposes of this subsection:

"(a) An exchange by the taxpayer of his residence for other property shall be considered as a sale of such residence, and the acquisition of a residence upon the exchange of property shall be considered as a purchase of such residence.

\* \* \* \* \* \*

"(4) Basis of new residence. Where the purchase of a new residence results, under paragraph (1), in the nonrecognition of gain upon the sale of an old residence, in determining the adjusted basis of the new residence as of any time following the sale of the old residence, the adjustments to basis shall include a reduction by an amount equal to the amount of the gain not so recognized upon the sale of the old residence. For this purpose, the amount of the gain not so recognized upon the sale of the old residence includes only so much of such gain as is not recognized by reason of the cost, up to such time, of purchasing the new residence."

Applying the above statute, the plaintiffs subtract the $9,000 reinvested in the new principal residence from the $15,200 "boot" received in the exchange, and assert that the recognizable, taxable capital gain from the entire transaction was $6,200. The Government in its brief rejects this view as an arbitrary apportionment of the "boot" and urges instead that since the old residence was worth $9,000 of the $90,200 collective market value of the house and farm at the time of the exchange, then only 90/902 of the $15,200 cash "boot" or $1,516.63 was paid to the taxpayers for the residence. The Government then avers that plaintiffs received 90/902 of the $75,000-value Ohio farm, or $7,483.37, in exchange for the residence. Since plaintiffs attribute no basis to the old residence, defendant asserts the $7,483.37 figure constitutes recognizable gain from the transaction, inasmuch as the residence was not being used for "productive purposes," and is not a property of "like kind" when exchanged for a part of a farm. Under the Government's theory, a total of $22,683.37 would be recognized gain from the exchange, made up of the $1,516.63 "boot" received for the house, the remaining $13,683.37 of the "boot" received for the West Virginia farm, and the $7,483.37-worth of Ohio farm received for the residence. From that

total of $22,683.37, the Government then deducts the $9,000 paid for the new residence, and arrives at a net taxable gain figure of $13,683.37.

Taking the entire transaction as an exchange, as found by the jury, counsel have stipulated that using the plaintiffs' method of apportioning the "boot," the plaintiffs have overpaid their taxes by $11,602.38, whereas under the Government's theory of apportionment the taxpayers have made overpayments totalling $10,888.15—a difference of $714.23 depending on which method of computation the Court accepts. Counsel agree that the precise question raised here as to how the "boot" should be apportioned has never been decided by any court, and is not covered specifically by any statute or applicable regulation. Counsel cite no treatises, texts, commentators or other authorities as to how the question should be resolved. The Government having provided no regulations to guide taxpayers on the matter of allocation in these cases, it should not complain when the taxpayers here make a reasonable allocation which favors the taxpayers to the extent of $714.23.

The Government's theory of apportionment as outlined above runs completely contrary to the spirit and intent of the particular tax statutes involved. Unlike the usual general rule in income tax matters that all income is recognized and taxed at the time of realization, here we are dealing with two exceptions which Congress has seen fit to include in the tax structure: (1) nonrecognition of gain upon the exchange of like properties held for productive use, and (2) the exchange of principal residences (including sale of one and purchase of another). In both of these situations, relief has been granted to taxpayers because Congress has felt it would be inequitable to impose a tax where there has been no real economic gain. As stated by the court in Trenton Cotton Oil Co. v. Commissioner of Internal Revenue, 6 Cir., 147 F.2d 33, 36, rehearing denied 148 F.2d 208:

"The purpose of Section 112(b) was to save the taxpayer from an immediate recognition of gain and the tax thereon * * * where gain or loss may have occurred in a constitutional sense, but where in a popular and economic sense there has been a mere change in the form of ownership * * *."

See also Century Electric Co. v. Commissioner, 8 Cir., 192 F.2d 155, certiorari denied 342 U.S. 954, 72 S.Ct. 625, 96 L.Ed. 708; Fairfield S. S. Corp. v. Commissioner, 2 Cir., 157 F.2d 321; and the legislative history of Section 112(n) in the Congressional Record, Volume 97, pages 6891, 6960–6961. Treasury Regulations 118, § 39.112(a)–1, promulgated under the 1939 Act, bear out this view:

"(b) Exceptions to the general rule are made by section 112(b) (1) * * * in the case of certain specifically described exchanges of property in which at the time of the exchange particular differences exist between the property parted with and the property acquired, but such differences are more formal than substantial. As to these, the Internal Revenue Code provides that such differences shall not be deemed controlling, and that gain or loss shall not be recognized at the time of the exchange. The underlying assumption of these exceptions is that the new property is substantially a continuation of the old investment still unliquidated; * * *."

Any other treatment would often result in a hardship. Where a taxpayer has exchanged properties and received no money, he might not have the money with which to pay income taxes on any realized gain. Likewise, having reinvested in a new residence all the money he received from the sale of an old residence, a taxpayer might well be unable to pay taxes on what technically is realized gain but actually involves no economic gain.

In the instant case, after the exchange of farms and residences, taxpayers owned geographically different property

from that held previously, but they still owned substantially the same things as before. At the beginning of 1951 these plaintiffs owned a farm and a $9,000 residence. At the conclusion of the transactions described above, they still owned a farm, and a residence in which they had invested in excess of $9,000. The only real economic gain they had from the transactions was the $6,200 remaining from the "boot" they received. Other than the $6,200, in the language of Regulation § 39.112(a)–1 above, "the new property is substantially a continuation of the old investment," and the plaintiffs are entitled to the tax benefits provided by Congress.

This result does not deprive the Government of taxes, really, for the taxpayers must carry over to the new farm the $45,000 low basis they held in the old farm, and the adjusted basis of the new residence must be reduced by the $9,000 gain not now recognized on the sale of the old residence. At any time the taxpayers should sell their property, the recognized, taxable gain will thus be higher. The end result is only a postponement of taxes until such time as plaintiffs actually incur an economic gain. It might be argued that postponement could mean denial of tax collection because if plaintiffs should not sell the property, but instead leave it to their children at death, the children would take the property with a basis of the fair market value at that time and the Government would get no taxes from this transaction except as to the $6,200. That, however, is no reason to deny this postponement. That result may never come about; if it does, it is because of other tax benefits granted by Congress.

The defendant has set forth in its brief two examples of exchanges somewhat similar to that in this case, has computed the taxes thereon by both methods which are urged here, and arrived at answers which it urges indicate the injustice of plaintiffs' method of apportionment: Assume that a farm having a market value of $80,000 and a basis of $40,000, along with a residence thereon having a market value of $20,000 and a basis of either $10,000 or $5,000, are exchanged by Taxpayer X for a farm worth $85,000 and $15,000 cash "boot." Using the Government's theory of fractional designation that the residence was worth $20,000 of the total $100,000 received, so that the house was exchanged for 1/5 of the "boot" and 1/5 of the new farm, the Government states that the taxable gain from the transaction would be $22,000 if the basis of the residence were $10,000 and the taxable gain would be $27,000 if the basis of the residence were $5,000. Defendant claims that under the taxpayers' theory of apportionment, the recognized gain in either instance would be $15,000. This, it is urged, could not be correct because of the difference in basis in the two problems. Indeed, it is not correct—because the defendant has misapplied the plaintiffs' method of allocation.

It is to be noted that the facts of those examples do not parallel the facts in the case at bar. The defendant establishes a basis of either $5,000 or $10,000 on the residence in the illustration, whereas in the present case no basis is attributed to the old residence. The Government's brief recognizes that plaintiffs may properly take a zero basis in the old residence, citing Martin v. Commissioner, a 1952 Tax Court case (1952 Prentice-Hall T. C. Memorandum Decisions, par. 52,282), and Hirschberg v. United States, D.C.S.D.N.Y., 18 F.Supp. 881. Further, in the example Taxpayer X acquires a farm worth more than the market value of the old farm exchanged, and gets less cash than the market value of the residence, which is the reverse of the facts in the instant case. But even with these differences in fact, when properly applied the plaintiffs' method of computation reaches a fair result and permits taxation only of actual economic gain.

Under the assumed facts, there would be a tax-free exchange of the $80,000 market value old farm for $80,000-worth of the new $85,000 farm. The other $5,000 of the new farm necessarily came from a part of the $20,000 residence.

Stating it another way, the residence was exchanged or "sold" for $15,000 cash and $5,000-worth of new farm. Since the residence portion of the property disposed of was not held for productive use, the $5,000-worth of new farm received therefor was not received in a tax-free exchange, and would be presently taxable along with the cash received. If the basis of the house were $10,000, having received $20,000 in cash and farm for the house, the taxable gain would be $10,000. If the basis of the house were only $5,000, then the taxable gain would be $15,000. This assesses a tax only on economic gain, in consonance with the nonrecognition theory of Section 112, inasmuch as all the gain came from the "sale" of the residence. Under the defendant's theory, taxing $27,000 or $22,-000 as gain is just not realistic when a taxpayer is entitled to a tax-free exchange of his farm, when his residence is only worth $20,000.

Carrying the examples one additional step, if Taxpayer X reinvests the $15,000 "boot" he has received in a new residence within a year, then the taxable gain would be $5,000 since under Section 112 (n) gain is still recognized to the extent that the selling price of the old residence (in this example $20,000) exceeds the taxpayer's cost of purchasing the new residence. This still is taxing only economic gain. Taxpayer X then would have $5,000-worth of new farm which was not acquired in a tax-free exchange. He thereby has had a real gain on which he quite properly should be taxed.

■ Plaintiffs are correct in their contention that of the "boot" received by them in the exchange of farms, their total economic gain, and thereby their taxable capital gain, was $6,200. Accordingly, under the stipulation of counsel as to the amounts of overpayment, it is the ruling of this Court that plaintiffs should recover overpayments of taxes in the amount of $11,602.38, with interest. Counsel may prepare a formal judgment order incorporating the findings of the jury and the conclusions of law set forth in this opinion. Until such an order is entered, the judgment of this Court shall not be final. Cf. United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721.