ESTATE of Ritner K. WALLING, Deceased, Margaret C. Walling, Ritner E. Walling and J. Wesley McWilliam, Executors, and Margaret C. Walling, Surviving Wife, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15805.

United States Court of Appeals
Third Circuit.

Argued Sept. 16, 1966.

Decided Feb. 8, 1967.

Sherwin T. McDowell, Philadelphia, Pa. (William R. Spofford, Robert E. Mc-Quiston, Andrew B. Young, Ballard, Spahr, Andrews & Ingersoll, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., on the brief), for petitioners.

Lawrence B. Silver, Atty., Dept. of Justice, Tax Div., Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before STALEY, Chief Judge, and McLAUGHLIN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

STALEY, Chief Judge.

This petition for review of a decision of the Tax Court requires us to decide whether certain amounts expended by taxpayers were deductible as "repairs" under § 162(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 162(a).[1] The

---

1. "§ 162. Trade or business expenses
 (a) In general.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

The Regulations provide:
 "1.162–4 Repairs.
 "The cost of incidental repairs which neither materially add to the value of the property nor appreciably prolong its life, but keep it in an ordinarily efficient op-

Tax Court held that the repairs were incidental to the transfer of the capital assets on which they were made and were, therefore, capital in nature, resulting in a determination of a deficiency in taxpayers' return for the year of 1957.

In 1957, taxpayers, Ritner K. Walling[2] and Margaret C. Walling, his wife, were engaged in a partnership, The Oliver Transportation Company, which operated numerous barges transporting cargo, primarily coal, in the river and harbor of Philadelphia and off the Eastern Coast. The coast-trade business was carried on solely through the operation of the deep-sea barges "Darien" and "Mamei." During that year (1957), the taxpayers organized The Oliver Transportation Corporation and transferred to it the "Darien" and "Mamei" and the deep-sea haulage contracts, in return for which the taxpayers received virtually all the capital stock of the newly-formed corporation. Though the barges were transferred on May 29, 1957, the taxpayers had not, at that time, complied with their agreement to transfer them "in a seagoing and operational condition with current Coast Guard certificates and American Bureau of Shipping Load Line certificates."[3]

The partnership had operated the two barges for nearly a year after their immediately preceding drydocking and repairs, and during that time the barges had suffered the normal wear and tear incidental to their use. Within two months after they were transferred,[4] the "Darien" and "Mamei" were drydocked, repairs were made and inspection certificates obtained. The taxpayers paid the cost of the repairs[5] as provided in the contract of sale, and deducted the amounts from their 1957 joint return. The Commissioner disallowed the $57,567 expenditure, thereby increasing the partnership's distributable net income and the taxpayers' income by that amount. The Tax Court upheld the Commissioner's position, stating that though the expenditures "would normally be considered to be ordinary and necessary business expenses if incidental to the operation and maintenance of those vessels for business purposes, * * * [in this case, the] vessels were not used or intended to be used by the taxpayers after the repairs 'in carrying on any trade or business.'" The Tax Court concluded that since the repairs were made after the transfer and since the expenditures were required by the transfer agreement "[t]hey were thus incidental to that transfer and were therefore capital in nature." 45 T.C. 111 at 118 (October 25, 1965).

■ The existence of a transfer would appear to add a new consideration to the often litigated question of whether a restoration of property is deductible as an expense of doing business or must be capitalized and then depreciated. Cf. 4A Mertens, Law of Federal Income Taxation § 25.41 at 190. The test which

erating condition, may be deducted as an expense, provided the cost of acquisition or production or the gain or loss basis of the taxpayer's plant, equipment, or other property, as the case may be, is not increased by the amount of such expenditures. * * *" 26 C.F.R. § 1.162-4 (1966).

2. Ritner K. Walling died in 1958; the executors of his will represent his interests and are substituted of record.

3. Coast Guard inspection is required by 46 U.S.C. § 395(b) at least once every two years to determine structural efficiency. Load Line certificates are required by 46 U.S.C. § 88 et seq. to prevent loading beyond a specified point. The inspection function has been delegated to the Ameri-

can Bureau of Shipping, 46 C.F.R. § 43.01-40 (1966).

4. The "Darien" was drydocked on June 8 to June 17, 1957. Its load line certificate was to expire on July 23, 1957, and its Coast Guard certificate was to expire on October 3, 1957. The "Mamei" was drydocked July 11 to July 22, 1957. Its Coast Guard certificate expired on May 26, 1957, and its load line certificate was to expire on July 16, 1957.

5. The cost of the repairs was $30,093 for the "Darien" and $27,474 for the "Mamei." Similar amounts had been deducted for repairs in 1956. It is conceded that the repairs made were the minimal amount necessary to obtain the current certificates.

normally is to be applied is that if the improvements were made to "put" the particular capital asset in efficient operating condition, then they are capital in nature. If, however, they were made merely to "keep" the asset in efficient operating condition, then they are repairs and are deductible. Stoeltzing v. CIR, 266 F.2d 374, 376 (C.A.3, 1959).

Though the Tax Court, in effect, found that the expenditures were made to "keep" the "Darien" and "Mamei" in efficient operating condition, it apparently found the "put-keep" distinction inapplicable because of the transfer and its relationship to the repairs which were eventually made. It reasoned that to permit a transferor to deduct the amounts expended where the repaired asset was sold would result in an unintended tax benefit to him since the increase in the value of the asset would be taxed at capital gains rather than the usual rates at which income produced would be taxed.

 We disagree with the Tax Court's analysis which would read into § 162(a) the requirement that the amounts sought to be deducted must be expended to carry on the business in the future. Keeping in mind that the deductions are a matter of legislative grace and that such provisions must be construed strictly, we cannot find in the statute any basis for concluding that only those expenditures which "carry on" or continue the business are deductible. The statute provides that "all the ordinary and necessary expenses paid or incurred during the taxable year in *carrying on* any trade or business" are deductible. "Taxation on net, not on gross, income has always been the broad basic policy of our income tax laws. Net income may be defined as what remains out of gross income after subtracting the ordinary and necessary expenses incurred in efforts to obtain or to keep it." McDonald v. CIR, 323 U.S. 57, 66–67, 65 S.Ct. 96, 100, 89 L.Ed. 68, 155 A.L.R. 119 (1944) (dissenting opinion of Mr. Justice Black). The repairs in question were made necessary by reason of the operation of the "Darien" and "Ma-mei" to produce income for the partner-ship. The fact that the expenses were not necessary to continue the partnership business seems to us to be of no consequence.

The position of the Tax Court requiring that the business be continued has, in the past, been urged before this court and rejected. In CIR v. Wayne Coal Mining Co., 209 F.2d 152 (C.A.3, 1954), we rejected the Commissioner's argument that the expenses must have some prospective effect before they would be deductible and held in accordance with the weight of authority that expenses incidental to dissolution were paid in carrying on a trade or business. Our conclusion also finds support in the line of cases following Flood v. United States, 133 F.2d 173 (C.A.1, 1943), where expenses paid after the taxpayer had gone out of business were held to be deductible.

Under our construction of § 162(a), then, the repairs expenses made necessary by the operation of the barges before the transfer on May 29, 1957, are clearly deductible by the petitioners. However, it is possible on the present record that the full $57,567 expenditure was not necessitated by the partnership operation. The "Darien" was drydocked over a week after its transfer to the corporation and the "Mamei," although its Coast Guard certificate had expired, was not drydocked until about six weeks after its transfer. Therefore, it is necessary to remand the case to provide the Commissioner with a reasonable opportunity to make an allocation.

It is true that the transfer of the barges was to a corporation in which petitioners were essentially the sole shareholders. The transfer thus falls within § 351 which provides:

"No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation * * *."

Without citing § 351, the Tax Court noted that "of course, * * * the gain on the transfer of the two vessels herein

was treated as nonrecognizable * * *." The obvious legislative object of § 351 and its statutory predecessor, § 112(b)(5) of the 1939 Code, is that Congress did not intend to tax "mere change[s] in the form of ownership." Jordan Marsh Co. v. CIR, 269 F.2d 453, 456 (C.A.2, 1959); Barker v. United States, 200 F.2d 223, 228 (C.A.9, 1952); Trenton Cotton Oil Co. v. CIR, 147 F.2d 33, 36 (C.A.6, 1945); CIR v. Bondholders Committee, 118 F.2d 511, 513 (C.A.9, 1941), aff'd, 315 U.S. 189, 62 S.Ct. 537, 86 L.Ed. 784 (1942); Portland Oil Co. v. CIR, 109 F.2d 479, 488 (C.A.1, 1940); Coastal Terminals, Inc. v. United States, 207 F.Supp. 560 (E.D.S.C., 1962); Sayre v. United States, 163 F.Supp. 495 (S.D. W.Va.1958).

Nevertheless, petitioners have here made a transfer, albeit a non-taxable one. We recognize that § 351 cannot be used as a device to avoid the payment of taxes. See Rooney v. United States, 305 F.2d 681 (C.A.9, 1962), affirming 189 F.Supp. 733 (N.D.Cal.1960); Central Cuba Sugar Co. v. CIR, 198 F.2d 214 (C.A.2, 1952). Those cited cases and our case of National Securities Corp. v. CIR, 137 F.2d 600 (C.A.3, 1943), point out that the Commissioner is empowered under § 45 of the 1939 Code and § 482 of the 1954 Code to allocate deductions among controlled businesses to prevent a distortion of income or deductions. On the record before us, it appears that the damage to the vessels which necessitated the repairs might have occurred over a period when both the partnership and the corporation were operating them. Though § 351 permits changes in form, it must be read consistently with the general policy of taxing net income—that is, "that the Congress intended the income tax laws 'to tax earnings and profits less expenses and losses' * * *." Tank Truck Rentals, Inc. v. CIR, 356 U.S. 30, 33, 78 S.Ct. 507, 509, 2 L.Ed.2d 562 (1958). The possibility that both the partnership (partners) and the corporation received profits from the operation of the "Darien" and "Mamei" ordinarily would require that the cost of making repairs be borne by both.

The decision of the Tax Court will be reversed and the cause remanded to provide the Commissioner with a reasonable opportunity to allocate the cost of repairs.