T.C. Memo. 1996-336


UNITED STATES TAX COURT


HELEN SOPHIE SCHROEDER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3920-95.                    Filed July 24, 1996.


Helen Sophie Schroeder, pro se.

<u>Elizabeth Patino</u> and <u>Trevor T. Wetherington</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following deficiencies in and accuracy-related penalties on petitioner's Federal income tax:

| Year | Deficiency | Accuracy-related Penalties Sec. 6662(a) |
|------|-----------|------------------------------------------|
| 1991 | $8,997 | $1,799 |
| 1992 | 4,069 | 814 |
| 1993 | 857 | 171 |

All section references are to the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.  After concessions,[1] the issues for decision are:

(1) Whether various costs incurred during 1991 that were related to buildings used in petitioner's farming and breeding businesses may be deducted under section 162 as ordinary and necessary business expenses or must be capitalized under section 263 as expenditures made pursuant to a general plan of capital improvements;

(2) whether petitioner is entitled to an interest expense deduction in the amount of $2,178 for the year 1992;

---

[1]  Petitioner concedes that she is not entitled to exemptions in the amounts of $4,300 and $4,600 for the years 1991 and 1992, respectively, for her two minor children, Sara Elizabeth Obertein and Mary Jo Louise Obertein.  Petitioner also concedes that she is not entitled to an exemption for her daughter Mary Jo Louise Obertein for 1993.  Respondent concedes that petitioner is entitled to an exemption for her daughter Sara Elizabeth Obertein for 1993.  Respondent also concedes that petitioner is entitled to exemptions for her brother, George Heiman David Schroeder for the years 1991, 1992, and 1993. Respondent further concedes that petitioner is entitled to head of household filing status for the years 1991, 1992, and 1993. Respondent further concedes that petitioner is entitled to a $1,046 interest deduction in 1993.

(3) whether petitioner is entitled to costs of goods sold in the amounts of $4,890, $16,850, and $1,400 for the years 1991, 1992, and 1993, respectively; and

(4) whether petitioner is liable for accuracy-related penalties under section 6662(a) for negligence or disregard of rules or regulations.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference. Petitioner resided in Rhodes, Michigan, at the time the petition was filed.

Petitioner owned two improved properties (hereinafter referred to as the Rhodes property and the Whitefeather property) that she used in her farming and breeding businesses. The properties were located across the street from each other. Petitioner farmed hay and straw, sold goats and pigs (1991 only), and raised poodles and quarter horses for sale.

The Rhodes Property

Petitioner had leased the Rhodes property since 1978 or 1979. Petitioner purchased the Rhodes property in 1985 from a longtime family friend whom she had taken care of during the last years of his life. She paid $25,000 and other noncash consideration for the property. The total purchase price is unknown. When purchased, the property consisted of 20 acres, a house, a granary, a large barn (Rhodes barn), two chicken coops,

and a bee cellar (collectively referred to as the Rhodes buildings). The Rhodes barn is a wooden building built between 1912 and 1915.  Petitioner considered building a new barn on the Rhodes property but could not get "for any kind of reasonable money" as much storage capacity as she had with the existing barn.  The Rhodes barn was in basically good condition, although it leaked and needed repair.  Its foundation was solid.  The remainder of the Rhodes property was in deplorable shape; weeds and brush had grown, and fences were in disrepair.  The chicken coops, the bee cellar, and the house were in such disrepair that petitioner had them demolished.  Prior to making the outlays described below, petitioner used the west end of the barn to stable horses.  The last time wood sealer had been applied to the Rhodes barn was in 1976 or 1977.  The barn's tin roof had been resilvered (painted with a silver-colored coating) also in 1976 or 1977.  The barn doors had been caught several times by the wind and were damaged.  The back wall of the Rhodes barn had been bowed out for over 10 years; petitioner admitted that it would eventually collapse if not repaired.

In 1991, petitioner resilvered the roof of the Rhodes barn and replaced four or five of the approximately 126 tin roof sections.  Petitioner also replaced two structural support rods (to partially fix the bowing out of the back barn wall), repounded nails in the wood, renailed the roof, caulked the nail holes in the roof, applied wood sealer, and prepped and painted

the outside of the barn with a red oil-based paint. The structure of the barn was not altered. The work done to the barn increased its hay storage capacity[2] and enhanced the appearance of the property. The granary roof also was fixed and the sides were treated and repainted in the same manner as the Rhodes barn. Petitioner spent $28,100 in 1991 to make repairs to, make improvements on, and demolish and remove buildings on the Rhodes property. She deducted the following expenses as repairs on her 1991 tax return:

| | |
|---|---|
| Repair of Rhodes barn roof | $6,800 |
| Preparation and painting of sides of Rhodes barn | 7,200 |
| Repair and removal of debris from interior of Rhodes barn | 1,500 |
| Repair of Rhodes granary roof | 2,700 |
| Preparation and painting of sides of Rhodes granary | 3,600 |
| Total | 21,800 |

The $6,300 cost of demolishing a house and a storage building and removing the debris was not deducted by petitioner. Petitioner also deducted $250 in 1991 for the replacement of a water heater in a small house on the Rhodes property. At trial, petitioner conceded that the $1,500 cost of replacing two of the three structural support rods was a capital improvement.

The Whitefeather Property

Petitioner purchased the Whitefeather property from her parents in 1993 for $25,000. The property consists of 40 acres

---

[2] Repairing the leaking roof allowed more hay to be stored.

and includes a large farmhouse, a small three-room house that petitioner used as an office, a chicken coop, a garage, a pump shed, and a barn (Whitefeather barn) to which a sheep shed and a cow stable were attached (collectively referred to as the Whitefeather buildings). The Whitefeather barn was built about 1932 or 1933 and was in usable condition. Petitioner has used the barn to store hay and stable horses for the last 15 years. Petitioner could not remember the last time the Whitefeather barn had been sealed or painted.

In 1991, petitioner resealed and painted the wood on the Whitefeather barn, installed new windows, fixed the doors and roof, divided a horse stall into two foaling stalls, and demolished the sheep shed and the cow stable attached to the barn. Petitioner also had the chicken coop demolished. The work on the roof of the barn included resilvering, caulking, replacing one or two of the approximately 120 tin sections of the roof, and reinstalling lightning rods. Although the work did not increase the Whitefeather barn's storage capacity, it did enhance its appearance.

Petitioner deducted the following expenses as repairs to the Whitefeather property on her 1991 tax return:

| | |
|---|---|
| Repair roof of Whitefeather barn | $2,400 |
| Preparation and painting of Whitefeather barn | 2,300 |
| Total | 4,700 |

Petitioner's invoice for the above described work was consistent with the description on her tax return. It made no reference to

demolition, dividing a stall into two foaling stalls, or door and window repairs.

## Petitioner's Record-Keeping Practices

Petitioner did not keep a formal set of books. She would consolidate her paperwork on summary sheets at the end of the year or when she prepared her income tax returns. The summary sheets were prepared from receipts and entries in petitioner's pocket calendar. After they were consolidated, the records used to prepare the summary sheets "went into the wood stove". We found petitioner's testimony to be highly credible.

## Petitioner's 1992 Interest Deduction

Petitioner deducted $2,178 as interest expense on a Schedule C attached to her 1992 Federal individual income tax return. Respondent admits that petitioner paid $378 to the State Bank of Standish in 1992 on an installment loan. The proceeds of the installment loan were used to make some of the repairs described above on the Whitefeather property. Petitioner paid interest to the Michigan Federal Credit Union on a loan that was used to purchase a tractor, a baler, and other farm equipment. However, the amount of interest paid to the Michigan Federal Credit Union is not in the record. Petitioner borrowed $8,000 from Michael Tuffnell in the spring of 1992. No cash payments were made on the Tuffnell loan in 1992, although petitioner gave Mr. Tuffnell about $2,500 of hay and straw as payment toward the loan.

Petitioner's 1991 Cost of Goods Sold[3]

Petitioner reported $4,890 as cost of goods sold on Schedule F on her 1991 tax return.[4]  The $4,890 represents the purchase price of livestock and beef as follows:

| | |
|---|---|
| Magic (horse) | $800 |
| Pigs (10 at $45 each) | 450 |
| Pigs (20 at $40 each) | 800 |
| Beef (6 at $380 each) | 2,280 |
| Goats (20 at $10 each) | 200 |
| Goats (15 at $15 each) | [1]360 |
| Total | 4,890 |

[1] Petitioner's math was in error.  The correct total should be $225.

Petitioner bought Magic from Standish Livestock Sales in 1991. Petitioner did not believe that she bought 35 goats, although she reported both the purchase and sale of 35 goats on her 1991 tax return.  Petitioner did not report the sale of any pigs on her 1991 tax return.

Petitioner's 1992 Cost of Goods Sold

Petitioner calculated her cost of goods sold on part III of Schedule C on her 1992 tax return as follows:

| | |
|---|---|
| Inventory at beginning of year | $5,850 |
| Purchases | -0- |
| Cost of labor | -0- |

---

[3]  Since respondent does not dispute that the items in question are allowable as cost of goods sold if properly substantiated, we will decide only whether adequate substantiation has been shown.

[4]  Petitioner reported her business activities on Schedule F in 1991 using the cash method of accounting.  Petitioner changed the nature of her business and reported it on Schedule C in 1992 and 1993 using the accrual method of accounting.

| | |
|---|---|
| Materials and supplies | 8,300 |
| Other costs | 6,900 |
| Subtotal | 21,050 |
| Less inventory at end of year | 4,200 |
| Total | 16,850 |

Petitioner calculated her beginning inventory by taking the horses and dogs that she started the year with and assigning the following values to them:

| | |
|---|---|
| Crystal (horse) | $3,500 |
| Candy (horse) | 1,200 |
| Sparky (dog) | 150 |
| Wanda (dog) | 200 |
| Rascal (dog) | 250 |
| Buddy (dog) | 220 |
| Rose (horse) | 350 |
| Total | [1]5,870 |

[1] Petitioner recorded the total as $5,850.

Petitioner assigned an estimated fair market value to Crystal and Candy based on replacement value. Crystal was purchased by petitioner's ex-husband for an unknown amount in 1984. Candy was not purchased; she was foaled by Crystal. Sparky was purchased by petitioner in 1991 for $150. Wanda was purchased in 1992 by petitioner for $200. Rascal was purchased by petitioner in 1991 for $250. Buddy was purchased by petitioner in 1991 for $220. Rose was purchased by petitioner in 1991 for $350.

Petitioner substantiated $7,100 of the $8,300 subtracted for materials and supplies on her cost of goods sold schedule for 1992 through her testimony and summary sheets. Petitioner substantiated all of the $6,900 subtracted for miscellaneous cost of goods sold through her testimony and summary sheets.

Petitioner calculated her ending inventory by taking the horses and dogs that she ended the year with and assigning the following values to them:

| | |
|---|---:|
| Crystal (horse) | $3,500 |
| Sparky (dog) | 150 |
| Wanda (dog) | 200 |
| Buddy (dog) | 220 |
| 2 pups | 130 |
| Total | 4,200 |

## Petitioner's 1993 Cost of Goods Sold

Petitioner calculated her cost of goods sold on part III of Schedule C on her 1993 tax return as follows:

| | |
|---|---:|
| Inventory at beginning of year | $4,200 |
| Purchases | 600 |
| Cost of labor | -0- |
| Materials and supplies | 2,100 |
| Other costs | -0- |
| Subtotal | 6,900 |
| Less inventory at end of year | 5,500 |
| Total | 1,400 |

Petitioner's beginning 1993 inventory is the same as her ending 1992 inventory. The $600 in purchases consists of the purchase of the horse Rags. Petitioner substantiated the $2,100 subtracted for materials and supplies through her testimony and summary sheets.

Petitioner calculated her ending inventory by taking the horses and dogs that she ended the year with and assigning the following values to them:

| | |
|---|---:|
| Crystal (horse) | $3,500 |
| Midnight (horse) | 550 |
| Rags (horse) | 600 |
| Winston (horse) | 550 |

| | |
|---|---|
| Sparky  (dog) | 150 |
| Bubbles (dog) | 150 |
| Total | 5,500 |

Winston was the offspring of one of petitioner's foals.  There is no record of how Midnight and Bubbles were acquired.

OPINION

Whether Petitioner Must Capitalize Costs Related to Buildings

It is conceded by respondent that petitioner incurred costs for the Rhodes and Whitefeather properties in the amounts listed on her 1991 tax return.  The issue is whether petitioner must capitalize those costs.  "The line of demarcation between deductible repairs and additions to capital is, of course, obscure."  Stoeltzing v. Commissioner, 266 F.2d 374, 376 (3d Cir. 1959), affg. T.C. Memo. 1958-111.

Amounts expended for ordinary and necessary incidental repairs and maintenance may be deducted by a cash basis taxpayer when paid, while amounts incurred to permanently improve property or increase its value must be capitalized and depreciated over the useful life of the improvement.  Sec. 162(a); secs. 1.162-4, 1.263(a)-1(b), Income Tax Regs.  The Court of Appeals for the Ninth Circuit has summarized the difference as:

> The often-litigated distinction between repair expenses and capital improvements has been characterized as the difference between "keeping" and "putting" a capital asset in good condition:
>
>> The test which normally is to be applied is that if the improvements were made to "put" the particular capital asset in efficient operating condition, then they are capital in

> nature. If, however, they were made merely to "keep" the asset in efficient operating condition, then they are repairs and are deductible. [Moss v. Commissioner, 831 F.2d 833, 835 (9th Cir. 1987), revg. T.C. Memo. 1986-128 (quoting Estate of Walling v. Commissioner, 373 F.2d 190, 192-193 (3d Cir. 1967)).]

Whether an expense is deductible or must be capitalized is a question of fact. See Plainfield-Union Water Co. v. Commissioner, 39 T.C. 333, 338 (1962) (the test is whether an expense materially enhances the value of property or appreciably prolongs the life of the property).

Most of the expenditures at issue were for maintenance and repairs; they simply kept the capital asset in efficient operating condition. Prepping, treating, and painting wood, repounding nails, replacing a relatively small number of tin roof sheets, sealing nail holes, and painting roofs of buildings that were already in operating condition do not constitute capital improvements. These expenditures simply restored the buildings to their previous condition without adding to the value of the buildings or prolonging their life in a way that require the expenditures to be treated as capital. However, replacing two support rods on the Rhodes barn, dividing a stall into two foaling stalls on the Whitefeather barn, and the installation of a water heater in the Rhodes house are capital improvements. Also, the costs of demolishing the sheep shed, the cow stable, and the chicken coop on the Whitefeather property are nondeductible. Sec. 280B. Respondent does not argue that all of

the expenditures were capital improvements, but, as part of a

general plan of rehabilitation, she argues that all of the

expenditures nevertheless must be capitalized.

In United States v. Wehrli, 400 F.2d 686, 689-690 (10th Cir.

1968), the Court of Appeals for the Tenth Circuit stated:

> the courts have superimposed upon the criteria in the
> [Commissioner's] repair regulation an overriding precept
> that an expenditure made for an item which is part of a
> "general plan" of rehabilitation, modernization, and
> improvement of the property, must be capitalized, even
> though, standing alone, the item may appropriately be
> classified as one of repair.  * * *  Whether the plan
> exists, and whether a particular item is part of it, are
> usually questions of fact to be determined by the fact
> finder based upon a realistic appraisal of all the
> surrounding facts and circumstances, including, but not
> limited to, the purpose, nature, extent, and value of the
> work done, e.g., whether the work was done to suit the needs
> of an incoming tenant, or to adapt the property to a
> different use, or, in any event, whether what was done
> resulted in an appreciable enhancement of the property's
> value.  [Fn. ref. omitted.]

Petitioner continued to use the two barns and the granary for the

same business purposes after the repairs as she did before the

repairs.  The capital expenditures to install support rods and a

water heater, to divide a stall into two foaling stalls, and to

demolish a sheep shed and a cow stable were not substantial.  The

only substantial capital expenditures were $6,300 for demolition

of a house and a storage building and removal of debris on the

Rhodes property.  These costs were not deducted by petitioner and

do not relate to any building that was repaired.  "To our

knowledge, every case in which the rehabilitation doctrine has

been applied to date has involved substantial capital

improvements and repairs to the same specific asset, usually a structure in a state of disrepair."  Moss v. Commissioner, supra at 839 (fn. ref. omitted).

In Kaonis v. Commissioner, T.C. Memo. 1978-184, affd. without published opinion 639 F.2d 788 (9th Cir. 1981), we separated capital expenditures from repairs and allowed the taxpayer a deduction for the repairs to a rental house. Specifically, we found that the taxpayer's expenses for painting and cleaning restored the property to its previous condition and thus were deductible.  We declined to apply the rehabilitation doctrine because "the property was tenantable and generally suitable for its use in the trade or business."  Id.  Here, likewise, the two barns and the granary were suitable for use in petitioner's trade or business prior to the repairs; they had been used by petitioner for over 10 years.

Respondent points out that the repairs to the Rhodes barn increased its capacity to store hay.  In Keller Street Dev. Co. v. Commissioner, 37 T.C. 559 (1961), affd. in part and revd. in part on other grounds 323 F.2d 166 (9th Cir. 1963), the taxpayer, a brewery, made some capital improvements to its plant and equipment.  Most of the improvements were designed to increase productive capacity so that the brewery could fill increasing demand.  The Commissioner argued that certain expenses deducted by the taxpayer should have been capitalized because they were "part of a general betterment program".  Id. at 567.  However, we

declined to apply the rehabilitation doctrine because "the brewery was in operating condition and use during the taxable years in question and had been for several years before."  Id. at 568.  In this case, as was true in Kaonis and Keller, petitioner's property was generally suitable for its intended use.  Also, the structure of the Rhodes barn was not altered.  However, petitioner must capitalize the $1,500 paid for installing the two supporting rods in the Rhodes barn.  Petitioner must also capitalize the cost of dividing the stall into two foaling stalls and demolishing the sheep shed, the cow stable, and the chicken coop on the Whitefeather property.  The invoice for this work did not itemize these expenses.  Therefore, we will make an allocation based on the information available to us.  We find that of the $4,700 spent by petitioner on the Whitefeather buildings, $900 must be capitalized and added to petitioner's basis in the Whitefeather land and $100 must be capitalized as the cost of creating the two foaling stalls.  Sec. 280B.

Petitioner's 1992 Interest Deduction

Petitioner's burden of proving that respondent's determinations in her deficiency notice are erroneous includes the burden of substantiation.  See Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Deductions are a matter of legislative grace; petitioner has the burden of showing that she is entitled to any deduction

claimed.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Section 6001 requires taxpayers to maintain adequate records from which their tax liability may be determined. Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989).

Respondent conceded that petitioner paid $378 to the State Bank of Standish in 1992 on an installment loan.  Petitioner's testimony established that the interest was an ordinary and necessary expense of carrying on her trade or business. Consequently, the $378 is deductible.  Sec. 162.  Petitioner has failed to establish that she is entitled to the remaining portion of the claimed interest deduction.  Although we believe that petitioner borrowed money from the Michigan Federal Credit Union for use in her trade or business, she has not proven the amount. We cannot use the rule of Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930), to estimate the interest deduction because we must have some basis in fact upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  Without such basis, any allowance would amount to unguided largesse.[5] Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Petitioner's Costs of Goods Sold

---

[5] Respondent argues on brief that petitioner has not substantiated other deductions on her tax returns for 1992 and 1993.  The propriety of these deductions is not at issue as respondent failed to raise these issues in her notice of deficiency or in her pleadings.  Generally, we will not consider issues that are raised for the first time at trial or on brief. Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990).

Respondent has disallowed petitioner's costs of goods sold for 1991, 1992, and 1993. Petitioner bears the burden of proving that she is entitled to the claimed costs of goods sold. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Rockwell v. Commissioner, 512 F.2d 882, 886 (9th Cir. 1975), affg. T.C. Memo. 1972-133.

1. 1991

Petitioner has met her burden of proof as to the claimed costs of $800 for the horse Magic and $2,280 for beef. However, petitioner has not met her burden with respect to her claimed costs for goats and pigs. Although petitioner subtracted $1,250 for pigs on her 1991 cost of goods sold schedule, she reported no gross receipts from the sale of pigs. Since there was no sale of pigs reported on the 1991 tax return, cost of goods sold for pigs is not allowable for that year. Petitioner's testimony showed that she was confused as to whether she had mislabeled the sale of pigs as the sale of goats. Petitioner's return showed the purchase and sale of 35 goats; petitioner testified that she never owned that many goats. Since petitioner cannot establish what was sold, she is not entitled to cost of goods sold for those items. Accordingly, petitioner's total cost of goods sold for 1991 is $3,080.

2. 1992

Petitioner assigned values to some animals in her beginning and ending inventory based on her estimates of their fair market

values, which is ordinarily an improper method of valuing
inventory where there is no showing that fair market value was
lower than cost.  Petitioner had checked the box on her Schedule
C to value inventory at cost.  We find petitioner's beginning and
ending inventory for 1992 to be as follows:

|  | Beginning Inventory | Ending Inventory |
|---|---|---|
| Crystal (horse) | -0- | -0- |
| Candy (horse) | -0- | -0- |
| Sparky (dog) | $150 | $150 |
| Wanda (dog) | 200 | 200 |
| Rascal (dog) | 250 | 0 |
| Buddy (dog) | 220 | 220 |
| Rose (horse) | 350 | -0- |
| 2 pups | -0- | -0- |
| Total | 1,170 | 570 |

Since petitioner substantiated $7,100 of materials and supplies[6]
and $6,900 of miscellaneous costs, her total allowable costs for
1992 are $14,600 ($7,100 + 6,900 + (1,170 - 570)).

3.  1993

Petitioner again assigned values to some animals in her
beginning and ending inventory based on her estimates of their
fair market value, an improper method of valuing inventory in the
circumstances.  Petitioner's method of accounting, as established
in her 1992 tax return, was to value inventory at cost.  We
therefore find petitioner's beginning and ending inventory for
1993 to be as follows:

---

[6]  See supra note 3.

|  | Beginning Inventory | Ending Inventory |
|---|---|---|
| Crystal (horse) | -0- | -0- |
| Midnight (horse) | -0- | -0- |
| Rags (horse) | -0- | $600 |
| Winston (horse) | -0- | -0- |
| Sparky (dog) | $150 | 150 |
| Wanda (dog) | 200 | 200 |
| Buddy (dog) | 220 | 220 |
| Bubbles | -0- | -0- |
| 2 pups | -0- | -0- |
| Total | 570 | 1,170 |

Since petitioner substantiated $2,100 of materials and supplies and $600 of purchases, her total allowable costs for 1993 are $2,100 ($2,100 + 600 + (570 - 1,170)).

Section 6662(a) Accuracy-Related Penalty

Section 6662(a) imposes a penalty in an amount equal to 20 percent of the portion of the underpayment of tax attributable to one or more of the items set forth in section 6662(b), such as negligence or disregard of rules or regulations. Respondent determined that the entire underpayment of petitioner's tax was due to negligence or intentional disregard of rules or regulations. Sec. 6662(b)(1). As is the case of the predecessor section covering the addition to tax for negligence, section 6653(a), petitioner bears the burden of proof on the penalties in issue. Rule 142(a); Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence includes a failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence is the failure to exercise due care or the failure to

do what a reasonable and prudent person would do under the circumstances. <u>Neely v. Commissioner</u>, <u>supra</u>. Disregard includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs.

The accuracy-related penalties of section 6662 do not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1). The determination of whether petitioner acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner has conceded that she failed to keep accurate books and records, that she incorrectly claimed exemptions for her children, and that she should not have deducted the cost of installing the supporting rods. Petitioner has offered no evidence that she was not negligent in determining her cost of goods sold using fair market values rather than cost or in deducting the costs of demolition on the Whitefeather barn. To the extent that respondent has prevailed on the underlying issues, her corresponding determination of the applicable penalties is sustained.

To reflect the foregoing and concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.